IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3110-D

| | | |
|---|---|---|
| OCTAVIOUS E. ELMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SERGEANT BASS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Octavious E. Elmore ("Elmore" or "plaintiff"), a state inmate, filed this action under 42 U.S.C. § 1983 and state law [D.E. 1]. On September 24, 2010, counsel for Elmore filed an amended complaint [D.E. 8] and obtained summonses [D.E. 9]. On November 23, 2010, defendants Reid and Rowland ("the supervisory defendants") filed a motion to dismiss [D.E. 20]. On December 14, 2010, Elmore responded in opposition to the motion to dismiss [D.E. 22]. On January 3, 2011, the court allowed Elmore's motion for extension of time and gave plaintiff until February 25, 2011 to effect service on defendant Curtis [D.E. 23]. Plaintiff has not filed proof of service on defendant Curtis, as required by Federal Rule of Civil Procedure 4(*l*).

I.

The relevant allegations of Elmore's complaint are as follows. At all times relevant to the complaint, Elmore was a state inmate housed in a modified segregation unit at Polk Correctional Institution ("PCI"). Am. Compl. ¶ 16. The North Carolina Department of Correction ("DOC") employed defendant Rowland as the Administrator of PCI. Id. ¶ 8. The DOC employed defendant Reid as the Assistant Superintendent for Custody and Operations of PCI. Id. ¶ 9. The DOC employed defendants Bass, Smith, Curtis, and Branch ("the correctional officer defendants") as

correctional officers at PCI. Id. ¶¶ 10–13.

On August 9, 2009, Defendant Smith called Elmore out of the dayroom to defendant Bass's office. Id. ¶ 19. When Elmore entered defendant Bass's office, Bass accused Elmore of encouraging inmates to write grievances against Bass, and threatened to send Elmore to segregation on a disciplinary charge of inciting a riot. Id. ¶¶ 22, 24. Bass then instructed Smith to handcuff Elmore's hands behind his back, and instructed Elmore to step into the hallway. Id. ¶¶ 25, 27. Bass followed Elmore (who was then handcuffed) into the hallway and began "yelling at Plaintiff in an increasingly hostile manner." Id. ¶ 29. Thereafter, and without warning, Bass struck Elmore in the face with a metal baton, causing a deep gash above Elmore's left eyebrow which bled profusely. Id. ¶¶ 31, 34. Defendants Curtis, Smith and Branch were present when Bass struck Elmore, and did not attempt to stop Bass. Id. ¶¶ 21, 32.

Bass then instructed Smith to handcuff Elmore's hands in front of his body, and instructed Elmore to clean up his blood from the hallway floor. Id. ¶¶ 38–39. Bass then ordered Elmore to change into clean clothes while defendants Curtis and Branch finished cleaning the hallway floor. Id. ¶ 40. Bass instructed Smith, Branch and Curtis to return to the dayroom and escort the other prisoners to their cells. Id. ¶ 42. They complied and did not seek medical attention for Elmore's injury. Id. Bass ordered Elmore to return to his office, admonished him, and ordered him back to his cell without seeking medical treatment for Elmore's injury. Id. ¶¶ 43–44. At least two other correctional officers observed some part of the incident. Id. ¶¶ 37, 41. The correctional officer defendants did not prepare a use of force report as required by DOC policy. Id., Ex. E.

Later, defendants Smith, Branch and Curtis "discovered Plaintiff in a lethargic state" in his cell and called defendant Bass. Id. ¶¶ 47–48. Bass placed Elmore in a wheelchair and transported him to the medical station, where Bass "repeatedly denied the cause of Plaintiff's injury, telling

2

medical staff and other officers that he had fallen on the floor, that his injury was insubstantial, and that he was faking his condition." Id. ¶¶ 49–52. PCI medical staff examined Elmore, "determined that his condition was life, limb, or health threatening," and sent Elmore to Durham Regional Hospital, where he received four stitches. Id. ¶¶ 53–54.

On August 13, 2009, Elmore filed Grievance Number 3980-09-0658. Am. Compl., Ex. B. In the grievance, Elmore described being beaten while handcuffed and being transported by Bass to the medical station in a wheelchair. Id. Elmore alleges that both of these actions clearly violate DOC policies. Am. Compl. ¶¶ 33, 50. Defendant Rowland responded to Elmore's grievance and stated that PCI's investigation was complete and found that Elmore's allegations were without merit. Id., Ex. C. Elmore appealed to the Grievance Resolution Board, which initially adopted defendant Rowland's findings. Id. ¶ 56 & Exs. C–D. However, on May 21, 2010, DOC issued a press release describing "an allegation of excessive use of force on an inmate at" PCI and the reassignment of defendants Rowland and Reid pending an internal investigation. Id., Ex. F. On May 28, 2010, DOC's Grievance Resolution Board issued a revised grievance response, stating that "additional evidence revealed the use of force had not been reported according to DOC Policy" and Elmore's allegations were substantiated upon further investigation. Id., Ex. E.

II.

The court first addresses the supervisory defendants' motion to dismiss. In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman

3

v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The supervisory defendants seek dismissal because Elmore seeks to hold them liable for the alleged conduct of their subordinates. See Mem. Supp. Mot. Dismiss 7–8. The doctrine of respondeat superior generally does not apply to a section 1983 action. See, e.g., Iqbal, 129 S. Ct. at 1948–49; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Carter v. Morris, 164 F.3d 215, 218, 220–21 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). However, section 1983 claims against supervisors are cognizable when liability is not premised upon respondeat superior but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

To establish liability under section 1983 for the supervisory defendants, plaintiff must establish three things:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an

4

"affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799; see Iqbal, 129 S. Ct. at 1949; Rizzo v. Goode, 423 U.S. 362, 371 (1976); Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). The subordinate's conduct must be "pervasive," meaning that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by subordinate poses an unreasonable risk of harm of constitutional injury." Shaw, 13 F.3d at 799. Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Furthermore, "a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Slakan, 737 F.2d at 373; see Randall v. Prince George's County, 302 F.3d 188, 206 (4th Cir. 2002). "A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding [the supervisor] either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Slakan, 737 F.2d at 373.

The supervisory defendants contend that plaintiff's allegations against them are conclusory and "do not permit this [c]ourt to draw a reasonable inference that the [supervisory] Defendants are liable for the alleged misconduct." Mem. Supp. Mot. Dismiss 8–9. Elmore notes that the supervisory defendants' specific "culpable acts and omissions are largely inaccessible to Plaintiff prior to discovery" and believes that DOC's "highly unusual" decision to reassign Rowland and Reid, in conjunction "with a declaration of zero tolerance for those who violate DOC policies and procedures," permits a plausible inference of "the Supervisory Defendants' knowledge of,

5

indifference to, and causal role in the violation of Plaintiff's rights." Mem. Opp'n Mot. Dismiss 10, 16–17.

As for defendant Reid, plaintiff fails to state a claim. The complaint contains no allegations upon which the court can infer that Reid was responsible for investigating plaintiff's grievance, that Reid was aware that the correctional officer defendants had a history of assaulting inmates, or even that Reid was aware of the assault upon plaintiff. See, e.g., Wilson v. Stallard, No. 7:10CV00237, 2010 WL 3291798, at *9 (W.D. Va. Aug. 19, 2010) (unpublished) (dismissing section 1983 claim against prison supervisory officers where inmate failed to allege that supervisors "had any knowledge of facts on which they could have inferred that [inmate] was at risk of suffering unconstitutional harm at the hands of" the correctional-officer defendants), aff'd, 403 F. App'x 797 (4th Cir. 2010) (per curiam) (unpublished).

As for defendant Rowland, Elmore notes that Rowland was responsible for conducting the investigation into Elmore's grievance, either personally or through direct delegation, and that the investigation was clearly inadequate, because it failed to uncover several obvious violations of DOC policy, as well as substantial "evidence demonstrating that Plaintiff was subject to excessive force." Mem. Opp'n Mot. Dismiss 13–14. "Plaintiff submits that, in the face of Plaintiff's serious injury and the officers' obvious violations of policy, this conclusion reflects Defendant Rowland's indifference to signs of excessive force." Id. at 15. However, Elmore has failed to allege Rowland's "continued inaction in the face of documented widespread abuses . . . . [which] permitted the constitutional abuses to continue unchecked." Slakan, 737 F.2d at 373. Moreover, a failure to investigate a grievance, without more, does not rise to the level of a constitutional violation. See, e.g., George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative

6

complaint about a completed act of misconduct does not."); Beers-Capitol v. Whetzel, 256 F.3d 120, 140–41 (3d Cir. 2001) ("Although these investigations may have been inadequate, we do not review the adequacy of a [supervisory] defendant's response to an excessive risk to inmate safety in a deliberate indifference case until the plaintiff has established that the defendant knew or was aware of that risk. The performance of a less-than-thorough investigation of a risk does not show that the investigator believed that the excessive risk existed — indeed, it may show the opposite." (citation omitted)).

Next, the court addresses whether plaintiff has served defendant Curtis. Proper service of process (or waiver of service under Fed. R. Civ. P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See, e.g., Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m). Additionally, "proof of service must be made to the court." Fed. R. Civ. P. 4(*l*). Accordingly, the court directs Elmore to either file proof of service on defendant Curtis, or show good cause why the court should not dismiss Elmore's claims against defendant Curtis without prejudice. Elmore shall file either proof of service or other response to this order by June 8, 2011. After Elmore files his response, the court will enter a scheduling order.

Finally, the court notes that on November 5, 2010, defendant Smith filed a pro se answer to the complaint [D.E. 17].[1] However, Smith has not been added as a party of record in the court's

---

[1] Smith's answer contains a motion to dismiss, which fails to comply with Local Civil Rule 7.1(d), EDNC, in that Smith did not file an accompanying supporting memorandum. Smith will have an opportunity to renew his motion to dismiss pursuant to the scheduling order.

7

electronic filing system, such that he is provided with service of court orders.[2] The clerk is directed to add Smith as a party, and to serve him at his address of record with a copy of this order as well as the court's prior order [D.E. 23].

III.

For the reasons stated, the court GRANTS defendants Reid and Rowland's motion to dismiss [D.E. 20], and these defendants are DISMISSED. The court DIRECTS plaintiff to either file proof of service on defendant Curtis, or show good cause why the court should not dismiss plaintiff's claims against defendant Curtis without prejudice, by June 8, 2011. The clerk is DIRECTED to add Smith as a party, and to serve him at his address of record with a copy of this order as well as the court's prior order [D.E. 23].

SO ORDERED. This 24 day of May 2011.

JAMES C. DEVER III
United States District Judge

---

[2] It appears from certificates of service attached to various filings by the other parties to this action that they have served Smith with copies of their filings.

8